UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HENRY HEINIG,

Petitioner,

v.

PAT GLEBE,

Respondent.

CASE NO. C10-5365BHS/JRC

REPORT AND RECOMMENDATION

Noted for December 30, 2010

The underlying petition for a writ of habeas corpus has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and(B), and Local Magistrate Judge's Rule MJR3 and MJR4.

Two of the issues raised by petitioner are procedurally barred -- one because it was not raised as a federal claim, and the other because it was not raised at every stage of the state process. The remaining issues are not cognizable in a habeas corpus petition. The court, therefore, recommends that the petition be DENIED.

FACTS

Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from state convictions for unlawful manufacture of a controlled substance (methamphetamine), unlawful possession of pseudoephedrine with intent to manufacture methamphetamine, and possession of a controlled substance (methamphetamine). All offenses were committed on Aril 2, 2007. After a bench trial in which he was found guilty of all counts, petitioner was sentenced to 120 months confinement, plus 9 to 12 months of community custody (Record, ECF No. 10, Exhibit 1, Judgment and Sentence).

The Washington Court of Appeals provides the following statement of facts:

> On April 2, 2007, the Puyallup police received an anonymous tip that a strong odor of anhydrous ammonia was coming from unit A-102 of the Emerald Court Condominiums on 7th Street Southwest. Officer William Earick and Sergeant Scott Engle approached the unit on foot, shortly before midnight, intending to knock on the front door and talk to the occupants. When they approached the front door, they noticed that a surveillance camera was positioned to watch the front door. They quickly walked away, out of view, and to the side of the building complex.
>
> Earick walked to the back corner of the building to see if anyone was fleeing out the back and, while there, heard sounds coming from a back patio consistent with someone mixing chemicals. After Engle confirmed Earick's suspicions and backup officers arrived, he and Earick walked through a grassy unfenced area behind the condos and past at least one other unit before getting to the source of the noise, Heinig's patio.
>
> There Earick identified Engle and himself and asked Heinig to move away from the chemicals that were present on the back porch. They saw a metal container with a stirring stick, a container of xylene, a glass Mason jar, and coffee filters, all of which are commonly used in the methamphetamine manufacturing process.
>
> After Earick told Heinig to put his hands behind his back, Heinig fled and the officers pursued. Engle shot Heinig with a taser as Heinig began scaling a cyclone fence. He quickly became cooperative and they placed him under arrest, read Miranda warnings to him, and, after he acknowledged those rights and agreed to talk, Heinig explained that he was cooking methamphetamine. Heinig also explained that he had finished the extraction process but was not yet to the

"salting out" process as he "[was] still cooking." Report of Proceedings (RP) (Jan. 3, 2008) at 56.

Lieutenant Dalan Brokaw, the methamphetamine laboratory team supervisor, arrived shortly after midnight. He assessed the situation, noting the chemicals on the back porch and the need to ventilate the condo unit. While doing this, he observed, through the open back door, containers of what appeared to be bi-layered liquid, suggesting a pseudoephedrine extraction process. He then spoke with Heinig, who, at that time, was handcuffed and in or near the jail van. Heinig explained that a man and woman were still in the residence and that there was a container of anhydrous ammonia in the front bedroom closet.

Detective Clark obtained a search warrant, and Brokaw and several other officers searched the unit They seized methamphetamine manufacturing chemicals, containers, lithium batteries, jars of bi-layered liquid, pseudoephedrine tablets, and baggies of methamphetamine.

The State charged Heinig with unlawful manufacturing of methamphetamine, unlawful possession of pseudoephedrine and/or ephedrine with intent to manufacture methamphetamine, and unlawful possession of methamphetamine. In separate pretrial hearings, the court denied Heinig's CrR 3.5 and CrR 3.6 motions. The matter then proceeded to a bench trial after which the court found Heinig guilty of all three charged offenses. The court sentenced Heinig to 120 months of incarceration plus 9 to 12 months of community custody.

(Record, ECF No. 10, Exhibit 3, pages 1-3).

## PROCEDURAL HISTORY

Petitioner filed a direct appeal through counsel and raised the following grounds for relief:

1. The trial court erred by failing to bring Mr. Heinig to trial within the 90 day speedy trial time required by CrR3.3.

2. The trial court erred by failing to dismiss Mr. Heinig's case when the State failed to bring him to trial within the speedy trial requirements of CrR3.3.

(Record, ECF No. 10, Exhibit 4, page 1). In a statement of additional grounds Mr. Heinig contended that the state erred in failing to suppress evidence obtained in violation of his Fourth Amendment rights and that his sentence exceeded the statutory maximum

(Record, ECF No. 10, Exhibit 5, page 1). The Washington State Court of Appeals affirmed the conviction and sentence (Record, ECF No. 10, Exhibit 3).

Petitioner filed a motion for reconsideration raising the following grounds for relief:

1. Speedy trial: the federal fifth, sixth, and fourteenth amendments, and Washington's article I, sec. 10 and 22;

2. Search and seizure: the federal fourth amendment and Washington's article I section 7;

3. Failure to admit exculpatory evidence: The federal fifth and fourteenth amendments and Washington's article I section 22.

(Record, ECF No. 10, Exhibit 7, page 2). The motion for reconsideration was denied (Record, ECF No. 10, Exhibit 8).

Petitioner then filed a motion for discretionary review in the Washington State Supreme Court in which he stated raised the following issues:

> The issues presented for review are (1) Speedy Trial violations, (2) Search and Seizure violations, and (3) failure of the trial court to admit Exculpatory Evidence (justifying suppression of unlawfully obtained evidence). The Supreme Court is also asked to decide, as was the Court of Appeals, whether cumulative errors in these three issues amount [sic] to tacit ineffective assistance of counsel.

(Record, ECF No. 10, Exhibit 9, page 1). The motion for discretionary review was denied February 9, 2010 (Record, ECF No. 10, Exhibit 10).

Petitioner then filed the federal habeas corpus petition that is now before this court. He raises six grounds for review:

1. His Federal Constitutional Right to due process has been violated by failure to bring him to trial within the time frame specified in CrR 3.3.

2. Unconstitutional search and seizure.

3. Failure "to disclose the anonymous caller or any evidence to substantiate such a call, for the officers to have probable cause and for it to be valid."

4. The sentence exceeds the allowable standard range.

5. Trial error in allowing the "Open view doctrine" to deny defendant's Motion to Suppress.

6. Abuse of discretion in failing to admit pictures showing a Bamboo Screen obstructing the view of Mr. Heinig's back yard patio. (Expectation of privacy).

(Petition, ECF No. 1, pages 31-37).

Respondent filed an answer and argues that grounds for relief 2, 3, 5, and 6 are exhausted but as they address suppression of evidence and Fourth Amendment Search and Seizure issues they are not reviewable (Response, ECF No. 9, pages 13-14). Respondent also argues that grounds 1 and 4 are unexhausted and procedurally barred (Response, ECF No. 9, pages 8-13).

Petitioner did not reply, but instead filed a motion to stay the petition and hold it in abeyance (ECF No. 14). In that motion he concedes that grounds 1 and 4 are unexhausted. (ECF No. 13-1, page 4.)The motion to stay the petition has been denied by separate order.

**EVIDENTIARY HEARING NOT REQUIRED**

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing in this court shall not be held unless the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that there is no reason to conduct an evidentiary hearing.

**DISCUSSION**

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. See, e.g., Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

**A. *Exhaustion.***

In order to prove that petitioner's claims have been exhausted in state court, petitioner's claims must have been fairly presented at every level of appeal. Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S. 364 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Id. *citing* Picard v. Connor, 404 U.S. 270 (1971) *and* Anderson v. Harless, 459 U.S. 4 (1982). Petitioner concedes that grounds for relief 1 and 4 were not exhausted (ECF No. 13-1, page 4).

**B. *Procedural Bar.***

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of petitioner's claims. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991) (*citing* Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples which may satisfy "cause" include "interference by officials" that makes compliance with state procedural rules impracticable, "a showing that the factual or legal basis for a claim was not reasonably available to counsel", or "ineffective assistance of counsel." McCleskey, 499 U.S. at 494 (*citing* Murray, 477 U.S. at 488). Petitioner cannot show cause because nothing external to the defense prevented him from exhausting his claims.

Furthermore, petitioner cannot show that failure to consider the claims will result in a fundamental miscarriage of justice. In an "extraordinary case," this court may grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" if petitioner can show that the conviction is the result of a constitutional violation and that petitioner is actually innocent. Murray, 477 U.S. at 495-96. Petitioner cannot claim actual innocence. The evidence in this case shows that petitioner was caught while he was in the process of making methamphetamine on his porch. Grounds for relief 1 and 4 are procedurally barred and the court recommends these two grounds be DISMISSED as procedurally barred.

**C. *Ground 2 – Unconstitutional Search and Seizure.***

The Fourth Amendment assures the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." Courts will exclude evidence in order to effectuate these rights. Stone v. Powell, 428 U.S. 465, 482 (1976). However, the exclusionary rule itself is not a personal constitutional right. Id. at 486. The rule is a judicially created remedial device designed to deter future misconduct by removing the incentive to disregard the Fourth Amendment. Id. at 484. Evidence obtained in violation of the Fourth Amendment is excluded in the hope that the frequency of future violations will decrease. Id. at 492. Under Franks v. Delaware, 438 U.S. 154, 156 (1978) , and United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir.1985), evidence seized pursuant to a search warrant or wiretap must be suppressed if the defendant can prove by a preponderance of the evidence that: (1) in the affidavit in support of the search warrant or wiretap, the affiant included a statement that the affiant knew was false or the court recklessly disregarded the veracity of the affiant, and (2) the false statement was necessary to the court's finding of probable cause.

As with any remedial device, application of the exclusionary rule is restricted to those areas in which its remedial objectives are thought to be most efficaciously served. United States v. Calandra, 414 U.S. 338, 348 (1974). The Supreme Court recognized that implementation of the exclusionary rule at trial and on direct appeal discourages law enforcement officials from violating the Fourth Amendment. Powell, 428 U.S. at 492-93. "But the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs." Id. at 493. For this reason, the Powell Court removed Fourth Amendment claims from the scope of federal habeas corpus review. The Supreme Court held:

> "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

Powell, 428 U.S. at 482. It is not necessary that a petitioner actually litigate the Fourth Amendment claim in state court. Powell bars habeas corpus review of such claims so long as the petitioner had the opportunity to litigate the claims.

The Washington Superior Court Criminal Rules provide for a full and fair opportunity to litigate Fourth Amendment claims. See Washington State Criminal Procedure Rule 3.6. Therefore, petitioner's ground 2, the alleged unconstitutional search and seizure, should be denied because petitioner had a full and fair opportunity to litigate this claim in state court.

In ground for relief 3, the petitioner argues that the police did not identify the anonymous caller who first informed them of the smell of ammonia. Petitioner challenges whether the police officers had probable cause for the search warrant they obtained. He seeks to suppress all evidence obtained in the search of his apartment. Petitioner is again challenging a search and seizure by challenging the facts used to obtain a search warrant. This is another Fourth Amendment claim that he had an opportunity to make in state court, and, similarly, is barred. In both grounds for relief 5

and 6, the petitioner challenges the officers' claim that they could see onto petitioner's porch and could observe him making methamphetamine. Petitioner again seeks to challenge the admission of the evidence the police obtained on Fourth Amendment grounds. He is precluded from bringing these challenges in a habeas corpus action as he had the ability to address these issues in state court and didn't. Stone v. Powell, 428 U.S. 465 (1976).

CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only if a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (*citing* Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Under this standard, this court concludes that petitioner is not entitled to a certificate of appealability with respect to this petition.

**CONCLUSION**

Based on the foregoing discussion, the Court should DENY this petition. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).

Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on December 30, 2010, as noted in the caption.

DATED this 30th day of November, 2010.

J. Richard Creatura
United States Magistrate Judge